**ANDERSON & KARRENBERG**
Thomas R. Karrenberg #3726
Jon V. Harper #1378
50 West Broadway, Suite 700
Salt Lake City, Utah 84101-2035
Telephone:  (801) 534-1700
Facsimile:  (801) 364-7697
tkarrenberg@aklawfirm.com
jharper@aklawfirm.com

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Marc I. Gross
Jeremy A. Liberman
600 Third Avenue – 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street – Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184

**Attorneys for Plaintiff and the Proposed Class**

---

## IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

---

| | |
|---|---|
| JAMES H. APPLE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZAGG INCORPORATED, RANDALL HALES, ROBERT G. PEDERSEN, BRANDON T. O'BRIEN, EDWARD D. EKSTROM, SHUICHIRO UEYAMA, and CHERYL A. LARABEE,<br><br>Defendants. | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Case No. 2:12-cv-00852-EJF<br><br>Magistrate Judge Evelyn J. Furse<br><br>**DEMAND FOR JURY TRIAL** |

---

Plaintiff James H. Apple ("Plaintiff"), individually and on behalf of all other persons

similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the

following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Zagg Incorporated ("Zagg" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Zagg securities between February 28, 2012 and August 17, 2012, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under § 10(b) and §14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 10b-5 and 14a-9 promulgated thereunder.

2.      Zagg designs, manufactures and distributes branded protective coverings, audio accessories and power solutions for consumer electronic and hand-held devices.

3.      Unbeknownst to the Company's shareholders, a "margin call situation" involving Robert G. Pedersen ("Pedersen"), the Company's founder and Chief Executive Officer ("CEO") began in December 2011, whereby Pedersen borrowed substantial amounts of monies, putting up his Zagg shares as collateral. Although Defendant Pedersen ultimately resigned his post as the Company's Chief Executive Officer ("CEO") due to the "margin call situation," investors were

2

not informed that Defendant Pedersen had pledged Company stock until after his resignation over eight months later.

4.      On December 21, 2011, Defendant Pedersen sold nearly $2.6 million worth of Zagg stock. However, at the time, shareholders were only informed that Pedersen sold the stock to "meet an immediate financial obligation." In truth, the December 23 stock sale was made to meet a margin call. Moreover, further undisclosed to investors, Pederson had more than a million additional shares posted as collateral, which were subject to margin calls. Realizing that Pederson had recklessly put his position as CEO at risk at the expense of investors, the Company began a succession plan beginning in December 2011 to remove Pederson as CEO, and to appoint Defendant Hales as his successor. This succession plan was also purposefully hid from investors.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendant Pederson had placed more than 50% of his Zagg ownership as collateral on margin, jeopardizing his future with the Company; (ii) as a result of Pederson's reckless actions, the Company began a secret succession plan to replace him with Defendant Hales as CEO; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

6.      Moreover, on April 27, 2012, the Company filed a definitive proxy statement on a Schedule 14A (the "Proxy"). The Proxy contained the unanimous recommendation of the Company board of directors (the "Board") that Zagg shareholders vote in favor of, *inter alia*, the reelection of all five of the Company directors, including Defendant Pedersen. However, despite

the Board's knowledge of Defendant Pedersen's stock pledges, the Board authorized the filing of the Proxy without including any reference to Defendant Pedersen's use of Company stock as collateral. The omission of this information rendered the Proxy materially false and misleading.

7.     Following the Board's recommendation to vote in favor of all directors, Defendant Pedersen was reelected to a new term as a Company director.

8.     On August 17, 2012, the Company disclosed that Defendant Pedersen had "stepped down as CEO and Chairman," effective immediately.  It was later disclosed that Defendant Pedersen had resigned after selling 515,000 shares of Zagg common stock on August 14, 2012, at prices ranging between $8.10 and $8.43, to meet margin calls.  In a conference call held on August 28, 2012, the Company revealed that Pederson had sold an additional 1.2 million shares of Zagg stock to meet margin requirements, and due to "the margin call situation", the Company hired Defendant Hales as its President and Chief Operating Officer in December 2011, and that well before Pederson's resignation, Hale had been responsible for "much of the day to day responsibilities" of the Company.

9.     Immediately following the Company's August 17, 2012 announcement, Zagg stock declined $1.12 per share or over 13%, to close at $7.30 per share on August 20, 2012.

10.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rules 10b-5 and 14a-9 promulgated thereunder (17 C.F.R. § 240.10b-5, 17 C.F.R. § 240.14a-9).

4

12.     This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

13.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as Zagg's principal place of business is located within this District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Zagg securities at artificially inflated prices during the Class Period and has been damaged thereby.

16.     Defendant Zagg is a Nevada corporation with principal executive offices located at 3855 South 500 West, Suite J, Salt Lake City, UT 84115.  Zagg's common stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "ZAGG."

17.     Defendant Brandon T. O'Brien ("O'Brien") was, at all relevant times, the Company's Chief Financial Officer.

18.     Defendant Randall Hales ("Hales") was, at all relevant times, the Company's President, Chief Operating Officer and a director.  On August 20, 2012, Hales was appointed as the Company's Interim Chief Executive Officer.

19.     Defendant Pedersen was the Company's Chairman of the Board and CEO from 2006 through August 20, 2012.  Defendant Pederson was the co-founder of the Company.

20.     Defendant Edward D. Ekstrom ("Ekstrom") was, at all relevant times, a director.

21.     Defendant Shuichiro Ueyama ("Ueyama") was a director from 2009 through July 9, 2012.

22.     Defendant Cheryl A. Larabee ("Larabee") was, at all relevant times, a director.

23.     The Defendants referenced above in ¶¶ 17 - 19 are sometimes referred to herein as the "Individual Defendants."

24.     The Defendants referenced above in ¶¶ 18 – 22 are sometimes referred to herein as the "Director Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

25.     Zagg designs, manufactures and distributes protective coverings, audio accessories and power solutions for consumer electronic and hand-held devices under the brand names invisibleSHIELD®, ZAGGskins™, ZAGGbuds™, ZAGGsparq™, ZAGGmate™, ZAGGfolio™, ZAGGkeys™, iFrogz™ and Earpollution™. The Company's flagship product, the invisibleSHIELD, is made from a protective film covering that was developed originally to protect the leading edges of rotary blades of military helicopters. The Company determined that this same film product could be configured to fit onto the surface of electronic devices and marketed to consumers for use in protecting such devices from every day wear and tear, including scratches, scrapes, debris and other surface blemishes. The film also permits touch sensitivity, meaning it can be used on devices that have a touch-screen interface. The invisibleSHIELD film material is highly reliable and durable because it was originally developed for use in a high friction, high velocity context within the aerospace industry.

## Defendant Pedersen Pledges Company Stock

26.     Prior to the start of the Class Period, Defendant Pedersen pledged more than two million shares of Zagg stock on margin as collateral. At no point during the Class Period were shareholders informed that Pedersen had pledged such a substantial amount of shares as collateral on margin, which represented more than 50% of his stake in the Company.

27.     On December 23, 2011, Defendant Petersen filed a Form 4 with the SEC disclosing that he had sold approximately $2.6 million worth of Company stock. According to the Form 4, Petersen sold the stock to "meet an immediate financial obligation." In truth, the December 23 stock sale was made to meet a margin call, which represented only a fraction of the amount of Pederson's shares which were exposed to similar forced divestitures.

## The Proxy Failed to Disclose Material Information that the Board was Required to Disclose

28.     On April 27, 2012, the Company filed the Proxy with the SEC. The Proxy sought shareholder action on a number of items at the 2012 annual shareholder meeting, including whether or not (i) to elect five directors of the Company, including Pedersen, to serve until the next annual meeting of the stockholders and until a successor has been elected and qualified; and (ii) to confirm the appointment of KPMG LLP, as the Company's independent registered public accounting firm for the fiscal year ending December 31, 2012.

29.     Item 403(b) of Regulation S-K requires disclosure of the number of shares pledged as security by named executive officers, directors and director nominees in proxy statements.[1]

---

[1] See 17 C.F.R. § 229.403.

30.     The SEC has explained that "[t]o the extent that shares beneficially owned by named executive officers, directors and director nominees are used as collateral, these shares may be subject to material risk or contingencies that do not apply to other shares beneficially owned by these persons. These circumstances have the potential to influence management's performance and decisions.  As a result, we believe that the existence of these securities pledges could be material to shareholders."[2]

31.     However, despite actual knowledge of Defendant Pedersen's pledges of Company stock, the Board failed to disclose the existence of any Company shares pledged as collateral by Defendant Pedersen, much less the number of shares pledged.

32.     Information regarding stock pledges by Pedersen and the scope of such pledges were material to shareholders who were considering whether to elect a slate of directors that included Defendant Pedersen.   Furthermore, this information was material to shareholders because they were unaware that the Board had already acted to remove Pederson due to his indiscretions.     Absent disclosure of the pertinent details of Pedersen's stock pledges, shareholders had no opportunity to evaluate the impact of these stock pledges on the functioning of the Board.

### Materially False and Misleading
### Statements Issued During the Class Period

33.     On February 27, 2012, after the market closed, Zagg issued a press release announcing its financial and operating results for the quarter and year ended December 31, 2011. For the quarter, the Company reported net income of $9.6 million, or $0.32 diluted earnings per share ("EPS") and net sales of $67.5 million, as compared to net income of $3.4 million or $0.13

---

[2] *See* http://www.sec.gov/rules/final/2006/33-8732a.pdf

diluted EPS and net sales of $29 million for the same period a year ago. For the year, the Company reported net income of $17.6 million, or $0.63 diluted EPS and net sales of $179 million, as compared to net income of $9.9 million, or $0.41 diluted EPS and net sales of $76 million for the same period a year ago.

34.     On March 15, 2012, the Company filed an annual report for the period ended December 31, 2011 on Form 10-K with the SEC, which was signed by, among others, Defendants Pedersen and O'Brien, and reiterated the Company's previously announced annual financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Pedersen and O'Brien, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.     On May 3, 2012, Zagg issued a press release announcing its financial and operating results for the quarter ended March 31, 2012. For the quarter, the Company reported net income of $5.1 million, or $0.16 diluted EPS and net sales of $55.5 million, as compared to net income of $3.3 million, or $0.13 diluted EPS and net sales of $27 million for the same period a year ago.

36.     On May 10, 2012, the Company filed a quarterly report for the period ended March 31, 2012 on Form 10-Q with the SEC, which was signed by Defendants Pedersen and O'Brien, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Pedersen and O'Brien, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

9

37.     On August 2, 2012, Zagg issued a press release announcing its financial and operating results for the quarter ended June 30, 2012. For the quarter, the Company reported net income of $5.8 million, or $0.18 diluted EPS and net sales of $61.6 million, as compared to net income of $2.6 million, or $0.10 diluted EPS and revenue of $38.8 million for the same period a year ago.

38.     On this news, Zagg shares declined $2.39 per share or more than 22%, to close at $8.31 per share on August 3, 2012.

39.     On August 8, 2012, the Company filed a quarterly report for the period ended June 30, 2012 on Form 10-Q with the SEC, which was signed by Defendants Pedersen and O'Brien, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Pedersen and O'Brien, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

40.     The statements referenced in ¶¶ 33-37, 39 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them, including that: (i) Defendant Pederson had placed more than 50% of his Zagg ownership as collateral on margin, jeopardizing his future with the Company; (ii) as a result of Pederson's reckless actions, the Company began a secret succession plan to replace him with Defendant Hales; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

**The Truth Begins To Emerge**

41.     On Friday, August 17, 2012, after the market closed, the Company disclosed in a press release that Defendant Pedersen had "stepped down as CEO and Chairman," effective immediately.  The Press Release did not reveal that Pedersen was resigning because of margin calls.  Later the same day, Defendant Pedersen filed a Form 4 with the SEC disclosing that he had sold stock on August 14, 2012 to meet margin calls.

42.     On Monday, August 20, 2012, an analyst at Roth Capital disclosed in an analyst note that Defendant Pedersen stepped down as the Company's CEO and Chairman after selling 515,000 shares of Zagg common stock on August 14, 2012, at a price range of between $8.10 and $8.43, to meet margin calls, according to the Form 4 filed with the SEC by Defendant Pedersen.  Pedersen collected approximately $4.2 million in gross proceeds from the August 14 sale.

43.     On this news, Zagg stock declined $1.12 per share or over 13%, to close at $7.30 per share on August 20, 2012.

44.     On August 28, 2012, Pedersen filed a Form 4 with the SEC reporting that on August 24, 2012, Pedersen sold another 1.25 million shares to satisfy all of his remaining margin obligations.  Defendant Pedersen collected approximately $8.6 million in gross proceeds from the August 24 sale.

45.     On August 28, 2012, the Company held a conference call to discuss "recent events."  During the call, Defendant Hales finally set the record straight regarding Pedersen's resignation and confirmed that Pedersen left his position in the Company because of the margin calls.  Moreover, during the conference call, the Company admitted that Pederson's departure had been anticipated since December due to the margin calls, and that Defendant Hales, who had

11

been retained as the Company's President and COO on December 12, 2011, had been in charge of Zagg's "day to day operations" well before Pederson's resignation.

> <Question>The first question surrounds [Pedersen]'s departure, was it purely a result of the margin calls or is there something else going on?
>
> <Defendant Hales> No, his departure was entirely related to the margin call situation that started last December and unfortunately surfaced again two weeks ago.
>
> ***
>
> Robert and I have enjoyed an excellent working relationship since I joined the team last December as the President and COO. Prior to joining the executive team, I worked closely with Robert as a Member of the Board of Directors. Immediately after joining the company, Robert and I began working with the ZAGG leadership team to identify and establish corporate objectives that would serve to guide the company and all employees for the foreseeable future.
>
> Once those objectives were established, Robert handed much of the responsibilities for the day-to-day operations over to me. And since that time, I have worked with our employees, customers, vendors and suppliers to communicate and implement those objectives.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Zagg securities during the Class Period (the "Class"); and were damaged thereby.   Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Zagg securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and

12

can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Zagg or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

49.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Zagg;

- whether the Individual Defendants caused Zagg to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Zagg securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

52.  Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Zagg securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Zagg securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53.  Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

14

## COUNT I

### (Against the Individual Defendants and Zagg For Violations of Section 10(b) of the Exchange Act And Rule 10b-5 Promulgated Thereunder)

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     This Count is asserted against the Individual Defendants and Zagg and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56.     During the Class Period, the Individual Defendants and Zagg engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Zagg securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Zagg securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Individual Defendants and Zagg, and each of them, took the actions set forth herein.

57.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Individual Defendants and Zagg participated directly or indirectly in the preparation and/or

issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Zagg securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Zagg's finances and business prospects.

58.      By virtue of their positions at Zagg, the Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Individual Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Individual Defendants. Said acts and omissions of the Individual Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

59.      The Individual Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Zagg securities from their personal portfolios.

60.      Information showing that the Individual Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Individual Defendants' knowledge and control. As the senior managers and/or directors of Zagg, the Individual Defendants had knowledge of the details of Zagg's internal affairs.

61.      The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual

Defendants were able to and did, directly or indirectly, control the content of the statements of Zagg. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Zagg's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Zagg securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Zagg's business and financial condition which were concealed by the Individual Defendants and Zagg, Plaintiff and the other members of the Class purchased or otherwise acquired Zagg securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Individual Defendants and Zagg, and were damaged thereby.

62.     During the Class Period, Zagg securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Individual Defendants and Zagg made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Zagg securities at prices artificially inflated by the Individual Defendants and Zagg's wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Zagg securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Zagg securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

17

63.     By reason of the conduct alleged herein, the Individual Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Against the Director Defendants and Zagg For Violations of Section 14(a) of the Exchange Act And Rule 14a-9 Promulgated Thereunder)

65.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Relevant Period, the Director Defendants caused Zagg to disseminate the false and misleading Proxy specified above, which failed to disclose material facts regarding Defendant Pedersen's pledges of Zagg stock that would have made the statements in the Proxy, in light of the circumstances under which they were made, not misleading.  As set forth above, this information was required to be disclosed by Item 403(b) of Regulation S-K.  Also as set forth above, the Proxy omitted to state material facts necessary to make the statements in the proxy not misleading, in violation of Regulation 14a-9.

67.     The Proxy was reviewed and/or disseminated by the Director Defendants. It misrepresented and/or omitted material facts, including material information concerning Defendant Pedersen's pledges of Zagg stock.  By virtue of their positions within the Company,

18

as well as their personal knowledge of Defendant Pedersen's pledges of Zagg stock, the Director Defendants were aware of this information and of their duty to disclose this information in the Proxy.

68.     The Director Defendants were at least negligent in filing the Proxy with the above-noted materially false and/or misleading statements.

69.     The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would have considered them important in deciding how to vote on the various matters set forth in the Proxy for shareholder action. In addition, a reasonable shareholder would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy.

70.     By reason of the foregoing, the Director Defendants violated section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

## COUNT III

### (Against the Individual Defendants and the Director Defendants for Violations of Section 20(a) of the Exchange Act)

71.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     During the Class Period, the Individual Defendants and Director Defendants participated in the operation and management of Zagg, and conducted and participated, directly and indirectly, in the conduct of Zagg's business affairs. Because of their senior positions, they knew the adverse non-public information about Zagg's misstatement of income and expenses and false financial statements.

19

73.     As officers and/or directors of a publicly owned company, the Individual Defendants and Director Defendants had a duty to disseminate accurate and truthful information with respect to Zagg's financial condition and results of operations, and to correct promptly any public statements issued by Zagg which had become materially false or misleading.

74.     Because of their positions of control and authority as senior officers, the Individual Defendants and Director Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Zagg disseminated in the marketplace during the Class Period concerning Zagg's results of operations.  Throughout the Class Period, the Individual Defendants and Director Defendants exercised their power and authority to cause Zagg to engage in the wrongful acts complained of herein. The Individual Defendants and Director Defendants, therefore, were "controlling persons" of Zagg within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Zagg securities.

75.     Each of the Individual Defendants and Director Defendants, therefore, acted as a controlling person of Zagg.  By reason of their senior management positions and/or being directors of Zagg, each of the Individual Defendants and Director Defendants had the power to direct the actions of, and exercised the same to cause, Zagg to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants and Director Defendants exercised control over the general operations of Zagg and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76.     By reason of the above conduct, the Individual Defendants and Director Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Zagg.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 6, 2012

ANDERSON & KARRENBERG

   /s/ Jon V. Harper
Thomas R. Karrenberg
Jon V. Harper

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Marc I. Gross
Jeremy A. Liberman
Patrick V. Dahlstrom

*Attorneys for Plaintiff and the Proposed Class*

21