FILED
U.S. DISTRICT COURT

2014 FEB -5  A 10: 43

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IN RE: ZAGG SECURITIES LITIGATION | MEMORANDUM DECISION AND ORDER <br><br> <u>CLASS ACTION</u> |
| This Document relates to: All Actions | Case No. 2:12-CV-852 <br> Judge Dee Benson |

This is a securities class action on behalf of all persons who purchased ZAGG, Inc. ("ZAGG") common stock between February 28, 2012 and August 17, 2012 (the "Class Period"). The action was brought against ZAGG and certain officers and directors, for violations of Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934.

On July 5, 2013, the Court received two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The first was filed by defendants ZAGG, Randall Hales, Brandon T. O'Brien, Edward D. Ekstrom and Cheryl A. Larabee (the "Moving Defendants"). (Dkt. No. 56.) The other was filed by defendant Robert G. Pedersen. (Dkt. No. 59.) After briefing by the parties, the Court heard oral argument on the motions. Having considered the memoranda submitted by the parties, the relevant law, and the arguments of counsel, the Court enters the following Memorandum Decision and Order.

## BACKGROUND

In deciding whether to dismiss a securities fraud complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court presumes the truth of all well-pleaded facts in the complaint. Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert. denied, 549 U.S. 1209 (2007). In addition, the Court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, LTD., 551 U.S. 308, 322 (2007).

At the outset, the Court notes that the Moving Defendants and Pedersen have each filed unopposed requests for judicial notice of various publicly-available documents, including ZAGG press releases, forms filed with the SEC, transcripts of earnings conference calls, and a Google Finance chart showing opening and closing stock prices of ZAGG common stock from October 15, 2010 through August 17, 2012. (Dkt. Nos. 57, 60.) The Court takes judicial notice of these documents pursuant to Federal Rule of Evidence 201(b)(2).[1] See id.; GFF Corp. v. Associated

---

[1] Citations to judicially noticed documents are labeled as either Pedersen's RJN Ex. _, or Moving Defendants' RJN Ex. _.

Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997). With this in mind, the Court considers the facts and allegations in this case.

Corporate defendant ZAGG is a Nevada corporation with its principal executive offices in Salt Lake City, Utah. (Am. Compl. ¶ 18.) ZAGG designs, manufactures and distributes protective coverings, audio accessories and power solutions for consumer electronic and hand-held devices. (Am. Compl. ¶¶ 2, 18.) ZAGG's common stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "ZAGG." (Am. Compl. ¶ 18.)

The six individual defendants, Robert G. Pedersen, Randall Hales, Brandon T. O'Brien, Edward D. Ekstrom, Shuichiro Ueyama, and Cheryl A. Larabee, were all officers or directors of ZAGG during the Class Period.[2] (Am. Compl. ¶ 19-24). Ueyama has been dismissed from this action based on Plaintiff's failure to effectuate timely service. (Dkt. No. 71.)

At some point prior to the Class Period, Pedersen pledged more than two million shares of ZAGG stock on margin as collateral. (Am. Compl. ¶ 28.) SEC regulations require the disclosure of whether certain parties have pledged company shares as security. (Am. Compl. ¶ 40.) Specifically, Item 403(b) of SEC Regulation S-K requires disclosure of the number of shares pledged as security by named executive officers, directors, and director nominees. (Id.) Despite this requirement, during the Class Period ZAGG filed two annual reports,[3] six quarterly

---

[2]Specifically, Pedersen, a co-founder of ZAGG, was Chairman of the Board of Directors and CEO, during the class period. Hales was President, Chief Operating Officer and Director of ZAGG, and on August 17, 2012, he was appointed as Interim Chief Executive Officer. O'Brien was the Chief Financial Officer of ZAGG. Ekstrom was a Director of ZAGG. Larabee was a Director of ZAGG, and on August 17, 2012, she was appointed as Chairman of the Board of Directors.

[3]On March 25, 2011, and March 15, 2012, ZAGG filed annual reports on Form 10-K for the fiscal years ended December 31, 2010, and December 31, 2011, respectively. Each 10-K included a section discussing "Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters," in which ZAGG was required to disclose the

3

reports,[4] and two proxies[5] with the SEC, none of which disclose Pedersen's pledged shares. (Am. Compl. ¶¶ 49, 50-53, 57-60.)

On December 12, 2011, ZAGG announced the appointment of Hales as ZAGG's President and Chief Operating Officer. (Am. Compl. ¶ 54.) On December 16, 2011, ZAGG filed an 8-K with the SEC, disclosing Hales's hire, and stating that Pedersen would continue to "serve as Chairman and Chief Executive Officer of the Company." (Am. Compl. ¶ 55.) On February 27, 2012, ZAGG held its fourth quarter 2011 and full year 2011 earnings call, during which Pedersen described Hales's role as "help[ing] to manage the overall day-to-day operations of ZAGG." Moving Defendants' RJN, Ex. 3 at 2.

On December 21, 2011, Pedersen sold 345,200 shares of ZAGG stock, worth approximately $2.6 million, as a result of a margin call. (Am. Compl. ¶ 6.) That day, ZAGG's stock price dropped from $8.65 to $8.09. (Am. Compl. ¶ 62.) On December 23, 2011, Pedersen filed a Form 4 with the SEC, disclosing the sale. (Am. Compl. ¶ 29.) The Form 4 stated that the sale was made to meet an "immediate financial obligation." (Id.) ZAGG's stock price dropped even further on December 23, falling from $8.45 to $7.85. (Am. Compl. ¶ 63.) The following day it fell again, from $7.85 to $6.73. (Id.) On December 22, 2011, Pedersen prepared a Form

---

information mandated by Item 403.

[4]The quarterly reports were filed on Form 10-Q on the following dates: May 5, 2011; August 15, 2011; November 18, 2011; May 10, 2012; and August 8, 2012. Each quarterly report directed investors to consider the risk factors identified in that year's corresponding 10-K.

[5]On May 2, 2011 and April 27, 2012, ZAGG filed proxies with the SEC. Each proxy sought shareholder action on, *inter alia*, the re-election of the company's five directors, which included Pedersen. Both proxies disclosed Pedersen's ZAGG shareholdings, but did not address whether any of Pedersen's shares were pledged as security.

144 to be sent to the SEC, which disclosed that the sale was made to meet margin calls. See Pedersen's RJN, Ex. C. The SEC received Pedersen's Form 144 on December 30, 2011. Id.

On August 14, 2012, a second margin call forced Pedersen to sell 515,000 shares of ZAGG stock, worth approximately $4.2 million. (Am. Compl. ¶ 10.) That day ZAGG's stock price fell from $8.80 to $8.24. (Id.) On August 17, 2012, Pedersen filed a Form 4, which disclosed that the sale was made "to meet margin calls on [Pedersen]'s account." (Am. Compl. ¶ 30.) Also on August 17, ZAGG disclosed in a press release that Pedersen had stepped down as CEO and Chairman of the Board. (Id.) On August 20, 2012, ZAGG filed an 8-K with the SEC, announcing it had implemented a policy prohibiting directors, officers and 10% holders of ZAGG's securities from pledging ZAGG shares in a margin account. (Am. Compl. ¶ 48.)

On August 23, 2012, a third margin call forced Pedersen to sell an additional 1.25 million shares of ZAGG stock. (Am. Compl. ¶ 68.) On August 28, 2012, Pedersen filed a Form 4 disclosing that the sale was made to meet margin calls, and that the sale satisfied "all margin obligations." (Am. Compl. ¶ 30.) That same day, ZAGG held a conference call to discuss Pedersen's resignation, during which Hales stated that Pedersen's departure was "entirely related to the margin call situation that started last December and, unfortunately, surfaced again two weeks ago." (Am. Compl. ¶ 38); Moving Defendants' RJN, Ex. 5 at 5. During that same conference call, Pedersen declared that "[b]y completely deleveraging my ZAGG stock, I have removed the element of uncertainty around future unwanted sales and have taken a step towards building investor confidence in ZAGG." (Am. Compl. ¶ 69); Moving Defendants' RJN, Ex. 5 at 3.

The Plaintiffs in this case – people who purchased ZAGG, Inc. ("ZAGG") common stock between February 28, 2012 and August 17, 2012 – allege that (1) Defendants failed to disclose in various SEC filings and press releases that Pedersen had pledged more than 48% of his ZAGG stock as collateral on margin and (2) ZAGG began a secret succession plan to replace Pedersen with Hales as CEO and Larabee as Chairman.

Plaintiffs assert that these actions by the Defendants deceived the investing public, artificially inflated and maintained the market price of ZAGG common stock, and caused the Plaintiffs to purchase ZAGG stock at artificially inflated prices. (Am. Compl. ¶ 86.) Based on this conduct, Plaintiffs assert that Defendants violated Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78n(a) and 78t(a), and Rules 10b-5 and 14a-9 promulgated thereunder, 17 C.F.R. § 240.10b-5, 17 C.F.R. § 240.14a-9.

All Defendants seek to dismiss Plaintiffs' Section 10(b) and 14(a) claims on the grounds that Plaintiffs have failed to plead fraud with the specificity required under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b). Additionally, all Defendants seek to dismiss Plaintiffs' Section 20(a) claim, on the grounds that Plaintiffs have failed to plead an underlying primary violation of the Act.

## DISCUSSION

### I. Motion to Dismiss Standards

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. Tal

v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006), cert. denied, 549 U.S. 1209 (2007). The Court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Further, though all reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct 1937, 1949 (2009).

## II. Securities Fraud Pleading Requirements

Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In addition to this heightened pleading standard, precedent from the United States Court of Appeals for the Tenth Circuit requires Plaintiffs' § 10(b) and § 20(a) claims to satisfy the additional pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). See Adams v. Kinder-Morgan, Inc., 340 F.3d 1083 (10th Cir. 2003)

The PSLRA goes further than Rule 9(b) by requiring a complaint alleging securities fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Id. at 1095 (quoting 15 U.S.C.A. § 78u-4(b)(1)). With regard to the element of scienter, the PSLRA requires that plaintiffs alleging securities fraud must "state with particularity

7

facts giving rise to a strong inference that the defendant acted with the required state of mind."
Id. (quoting 15 U.S.C.A. §78u-4(b)(2)).

The United States Supreme Court has defined the "strong inference of scienter" pleading requirement set forth in the PSLRA as:

> The inference of scienter must be more than merely "reasonable" or "permissible" – it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007). In making this inquiry, the Court must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 323.

Additionally, the Moving Defendants contend, and Plaintiffs do not dispute, that the PSLRA's scienter pleading requirements apply to Plaintiffs' § 14(a) claims. Although the Tenth Circuit has not been required to decide whether the PSLRA applies to § 14(a) claims, the Court finds the statutory language unambiguous. All relevant sections of the PSLRA commence with the phrase, "[i]n *any* private action arising under this chapter," 15 U.S.C. §§ 78u-4(b)(1), (2) (emphasis added). Accordingly, all of Plaintiffs' claims must satisfy the heightened pleading standards of the PSLRA.

### III. Whether Plaintiffs Have Stated a Claim for Relief Under § 10(b)

To state a claim under § 10(b) of the Exchange Act and Rule10b-5 promulgated thereunder, plaintiffs must sufficiently allege that the defendant: (1) made a material misrepresentation or omission; (2) with scienter; (3) in connection with the purchase or sale of a

8

security; (4) upon which the plaintiff relied; (5) that the plaintiff suffered an economic loss; and (6) that the material misrepresentation was the cause of that loss. In re Williams Secs. Litig. WCG Subclass, 558 F.3d 1130, 1136 (10th Cir. 2009), citing Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148 (2008).

Here, all Defendants challenge Plaintiffs' § 10(b) claims as to the element of scienter, while Pedersen alone also challenges Plaintiffs' claim as to materiality, loss, and loss causation.

### A. Scienter under § 10(b) and Rule 10b

The requisite "scienter" for a § 10(b) claim is "a mental state embracing intent to deceive, manipulate, or defraud." Tellabs, 551 U.S. at 319. Proof of recklessness is sufficient to establish a § 10(b) claim. In this context, a defendant acts recklessly when his or her conduct amounts to an extreme departure from the standards of ordinary care, and presents a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of the danger. City of Philadelphia v. Fleming Companies, Inc., 264 F.3d 1245, 1260 (10th Cir. 2001). In the context of a claim based on non-disclosure of material facts, a plaintiff must show that the defendant 1) knew of the material fact; and 2) knew that failure to reveal the fact likely would mislead investors. Id. at 1261.

Plaintiffs allege that all Defendants failed to disclose that (1) Pedersen had pledged more than 48% of his ZAGG stock as collateral on margin and (2) ZAGG directors and officers instituted a secret succession plan to replace Pedersen with Hales as CEO, and Larabee as Chairman. Each allegation is taken up in turn.

9

i. *Pedersen's Stock Pledges*

Plaintiffs assert that all Defendants had actual knowledge of Pedersen's stock pledges (Am. Compl. ¶ 45.) Further, Plaintiffs claim that Defendants failed to disclose Pedersen's stock pledges in various SEC filings during the Class Period. (Am. Compl. ¶¶ 49-60.) Additionally, Plaintiffs allege that all Defendants had the "motive and opportunity" to issue the misleading statements and omit material information about Pedersen. (Am. Compl. ¶¶ 72.)

In support of these allegations, Plaintiffs correctly point out that an SEC regulation required the disclosure of the number of shares pledged as security by named executive officers and directors, which the Defendants failed to do in ZAGG's two annual reports, six quarterly reports, and two proxies, that ZAGG filed with the SEC during the Class Period. See 17 C.F.R. § 229.403. Plaintiffs also rely on the indisputable fact that Pedersen knew about the shares of ZAGG stock that he had pledged on margin.

However, the knowledge requirement to establish scienter under § 10(b) is two-fold. Fleming, 264 F.3d at 1261. Although Plaintiffs have provided facts sufficient to show that Pedersen knew that he had pledged his ZAGG shares, Plaintiffs have failed to allege any facts that Pedersen knew that his failure to reveal his pledges would likely mislead investors. Id. Additionally, Plaintiffs' allegations are completely unsupported by any particularized facts that might give rise to a strong inference that the pledged shares were "so obviously material" that Pedersen must have been aware that its non-disclosure would likely mislead investors. Accordingly, Plaintiffs' § 10(b) claim against Pedersen regarding his stock pledges fails.

With regard to the Moving Defendants, Plaintiffs further allege that "by virtue of their position" at ZAGG, Moving Defendants either "had actual knowledge" of Pedersen's stock

10

pledges, or acted with "reckless disregard for the truth." (Am. Compl. ¶ 88.) However, absent particularized facts, "[g]eneralized imputations of knowledge do not suffice, regardless of defendants' positions within the company." Fleming at 1264 (quoting Maldonado v. Dominguiz, 137 F.3d 1, 10 (1st Cir. 1998)).

Plaintiffs make no allegations of any meetings between Pedersen and any of the Moving Defendants or anyone else, which gave rise to Plaintiffs' suspicion that the Moving Defendants knew about the stock pledging prior to each margin call. There are no allegations of any memoranda, e-mails, or other written documentation to suggest that the Moving Defendants knew about the stock pledging prior to each margin call. There are no allegations as to any statements made by any Moving Defendant that could suggest that such Defendant knew about the stock pledging. The allegations are simply insufficient to suggest that the Moving Defendants knew about the stock pledging prior to each margin call. Therefore, the Court concludes that the Plaintiffs have not alleged sufficient facts about Pedersen's stock pledges to support their § 10(b) claim against the Moving Defendants.

    ii.  *The Secret Succession Plan*

Plaintiffs' also allege that ZAGG began a secret succession plan to remove Pedersen as CEO and Chairman of the Board in response to Pedersen's "rampant pledging of ZAGG shares." (Am. Compl. ¶ 7.) Plaintiffs argue that Defendants made material omissions when they failed to disclose the secret succession plan in a press release issued the day Hales was hired, or in an 8-K filed with the SEC on December 16, 2011. Plaintiffs claim that the 8-K that announced Hales's appointment as President and Chief Operating Officer, but "misleadingly informed investors" that Pedersen would continue to serve as Chairman and CEO. Plaintiffs also assert that ZAGG

11

failed to disclose the succession plan in its quarterly and annual reports filed during the Class Period. Plaintiffs claim that the secret succession plan "came to light" on August 28, 2012, when Hales admitted that Pedersen had stepped down as CEO and Chairman because of the "margin call situation that started last December and unfortunately surfaced again two weeks ago."

In support of these allegations, Plaintiffs essentially point to three facts. First, that Hales was hired to be in charge of "day to day operations." Second, that Hales eventually took over as interim-CEO once Pedersen had relinquished the position. Third, that Hales stated that Pedersen stepped down because of the margin call situation.

However, Plaintiffs fail to acknowledge that day-to-day operations are typically the responsibility of any company's chief *operating* officer. Plaintiffs also fail to account for the facts that Hales was hired nine days *prior* to Pedersen's first margin call, or that Pedersen continued to serve as CEO for more than nine months after Hales was hired. Additionally, as stated above, Plaintiffs have failed to plead any particularized facts that any of the Moving Defendants actually knew about Pedersen's stock pledging prior to each margin call.

While the replacement of one person by another is a necessary component to a secret succession plan, it is by no means sufficient. If it were, any shuffling of executive positions would immediately become suspect, and could become the subject of a lawsuit. This is precisely what Congress intended to avoid through the enactment of the heightened pleading requirements in the PSLRA. Plaintiffs' general, conclusory assertions to the contrary are not sufficient to satisfy the heightened pleading requirements of Rule 9(b), much less the PSLRA's strong inference requirement.

12

Because the Court finds Plaintiffs have failed to sufficiently plead scienter, the Court will dismiss the § 10(b) claims without addressing the sufficiency of Plaintiffs' allegations as to materiality, loss, and loss causation.

## IV. Whether Plaintiffs Have Stated a Claim for Relief Under § 14(a)

Liability under § 14(a) of the Exchange Act occurs when a corporate officer "solicit[s] any proxy" in violation of SEC regulations. 15 U.S.C. § 78n(a). SEC Rule 14a-9, in turn, provides that proxy statements may not contain false or misleading representations or omissions of material fact. Id., citing 17 C.F.R. § 240.14a-9.

The parties agree that a § 14(a) claim has three elements: "(1) that the proxy contained a material misrepresentation or omission; (2) that the defendant acted with the requisite state of mind, and (3) that the proxy was the essential link in completing the transaction in question." Britton v. Parker, Civ. A. No. 06-cv-1797-MSK-KLM, 2009 U.S. Dist. LEXIS 87829, at *20 (D. Colo. Sept. 23, 2009); see also Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970). Though negligence may satisfy the state of mind element in certain circumstances, where a claim is based in fraud, plaintiffs must meet the heightened scienter pleading requirement of the PSLRA. See, e.g., Police & Fire Ret. Sys. v. SafeNet, Inc., 645 F. Supp. 2d 210 (S.D.N.Y. 2009).

The Moving Defendants contend that Plaintiffs' allegations are insufficient to support the state of mind and essential link elements, while Pedersen only challenges the essential link element.

13

A. Scienter

The Moving Defendants contend, and Plaintiffs do not dispute, that the PSLRA's scienter pleading requirements apply to Plaintiffs' § 14(a) claims. In their opposition to the Moving Defendants' motion to dismiss, Plaintiffs point to their § 10(b) allegations regarding Pedersen's stock pledges as sufficient to also satisfy the scienter requirement of § 14(a). Because the Court finds Plaintiffs' §10(b) claims to insufficiently plead scienter, the Court likewise finds Plaintiffs' § 14(a) claims lacking.

B. Essential Link

Even if Plaintiffs had properly plead scienter, their § 14(a) claim would still fail for insufficiently pleading the essential link element. The essential link element "examines the issue of causation, inquiring whether the transaction described in the allegedly misleading Proxy Statement was one that, once approved by shareholders, resulted in a loss to the Plaintiff." Britton, 2009 U.S. Dist. LEXIS 87829, at *38. Damages under § 14(a) are only recoverable "when the votes for a specific corporate transaction require[ed] shareholder authorization . . . and that transaction was the direct cause of the pecuniary injury for which recovery is sought"). General Elec. Co v. Cathcart, 980 F.2d 927, 932-33 (3d Cir. 1992).

Here, Plaintiffs allege that Defendants failed to disclose Pedersen's stock pledges in ZAGG's 2011 and 2012 Proxies. Those proxies sought election of five directors, including Pedersen, to serve until the next annual meeting of the stockholders. Though Plaintiffs correctly point out Item 403(b) of Regulation S-K required ZAGG to disclose the number of share pledged as security by named executive officers and directors in the Proxies, Plaintiffs fail to allege how Pedersen's re-election as a director directly caused Plaintiffs' injury. In fact, in Plaintiffs' own

14

words, it was Pedersen's pledging of ZAGG shares prior to the start of the class period that created a "material risk to the market price and stability of ZAGG stock, arising from a potential margin call" and that later had a "devastating impact" on ZAGG – not Pedersen's re-election as a director. Accordingly, Plaintiffs failure to plead any particularized facts as to how the Proxies directly caused their loss is fatal to their § 14(a) claim.

V. **Whether Plaintiffs Have Stated a Claim for Relief Under § 20(a)**

Section 20(a) of the Exchange Act provides for "control person" liability. Section 20(a) claims are essentially derivative of other securities claims – § 10(b) and § 14(a) claims in this case.

Section 20(a) provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a) (2008). The Tenth Circuit has interpreted this statutory provision to require that, "to state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." Fleming, 264 F.3d at 1270-71 (quoting Maher v. Durango Metals, Inc., 144 F.3d 1302, 1305 (10th Cir. 1998)).

As noted above, Plaintiffs have not sufficiently alleged a primary violation of either § 10(b) or §14(a) by any of the Defendants. Therefore, Plaintiffs' § 20(a) claims fail as a matter of law. See, e.g., Fleming, 264 F.3d at 1270-71.

## CONCLUSION

In sum, Plaintiffs' §§ 10(b) and 14(a) allegations do not raise the strong inference of scienter required to defeat Defendants' motions to dismiss. Because Plaintiffs have failed to sufficiently plead a primary violation of the Exchange Act, Plaintiffs' § 20(a) claims necessarily fail as well. Accordingly, both motions to dismiss are **GRANTED**.

Dated this 4th day of February, 2014.

_____
Dee Benson
United States District Judge